# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ARTHUR HALLDIN, )
 )
       Plaintiff, )   2:07-cv-022
v. )
 )
MICHAEL J. ASTRUE,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
 )
       Defendant. )

**MEMORANDUM OPINION AND ORDER OF COURT**

May 7, 2008

**I.    Introduction**

Plaintiff, Arthur Halldin, (hereinafter "Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), which incorporates § 405(g) by reference, for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied his application for Disability Insurance Benefits ("DIB") Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433 and 1381 - 1383(f).

**II.    Background**

    **A.    <u>Facts</u>**

Plaintiff was born on January 25, 1944, and is classified as an "advanced age" individual pursuant to 20 C.F.R. § 404.1563(d). Plaintiff is a high school graduate.

---

[1]    Michael J. Astrue became the Commissioner of Social Security, effective February 12, 2007. Under Federal Rule of Civil Procedure 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as defendant in this action.

1

Throughout his work history, Plaintiff held several positions and worked consistently from 1961 to 2004 with the exception of three years in the early 1990s. R. 55. Plaintiff has past work experience as a printing press operator, a cutting press machine operator, and a hand packer. R. 197. At the administrative hearing, the vocational expert testified that the printing press operator position was considered light and skilled, the cutting press machine operator position was considered light and semi-skilled, and the hand packer position was considered medium and unskilled. *Id.*

Plaintiff alleges disability, as of March 31, 2004, due to back and knee pain. Since January 2000, Plaintiff has been seen and treated by his primary care physician, Edward H. Sawicki, M.D., for back, neck, and knee pain.. R. 111-116, 152-157. The limited medical record reflects that Plaintiff has a history of hypertension and lumbar disc disease, characterized by complaints of hip and back pain. R. 16. However, in July 2004, an x-ray of the lumbar spine revealed evidence of only mild narrowing / degenerative changes at the L4-5 level with no evidence of fracture, subluxation or other degenerative / arthritic abnormality.

The record does not reveal any complications stemming from Plaintiff's history of hypertension. Physical examinations have consistently revealed a regular heart rate and rhythm, clear lungs and no edema of the extremities. R. 110-114; 151-157.

On July 28, 2004, Durre Ahmed, M.D., performed a consultative physical examination at the request of the state agency. R. 131-140. Plaintiff reported that he had a history of back, hip, and knee pain, although he had no recollection of how the hip and back pain started. R. 131. Plaintiff reported that his knee pain started after he had a work-related accident while working in a coal mine. *Id.* He stated that he experienced a continuous dull ache in his back,

hip and knee, and that he could walk seven (7) blocks before the pain worsened. *Id.* He also experienced difficulty bending over and getting up from a sitting position on the floor. *Id.* Plaintiff used Tylenol Extra Strength which helped relieve the pain "a little." *Id.* Plaintiff reported that he could go up and down steps, but with some difficulty, was able to cook and clean for himself, and ran the sweeper for a short periods of time. *Id.* Plaintiff denied having any headaches, diplopia, sore throat, or ringing in his ears. R. 132. He also denied having any chest pain, pedal edema, shortness of breath, nausea, vomiting, abdominal pain, polyuria, polydipsia, or cold or heat intolerance. *Id.*

Upon physical examination, Dr. Ahmed noted a normal range of motion in the cervical area, shoulder, elbow, hip, knee, wrist, and knee. R. 133. The lumbosacral spine movement was restricted. *Id.* Plaintiff's strength and tone were good with no signs of atrophy or involuntary movement. *Id.* Plaintiff's gait was stable and he could walk on his heels and toes. *Id.* His touch and pain were intact with normal coordination and reflexes in his biceps, triceps, brachioradialis, quadriceps, and gastrocnemius. *Id.* Dr. Ahmed noted that Plaintiff could occasionally lift and carry 10 pounds, due to his back, knee, and hip pain, he could stand and walk for an hour or less, and he could only sit for one hour. R. 138. Plaintiff could occasionally bend, kneel, stoop, crouch, balance, and climb. R. 139. He had no limitations regarding reach, handling, fingering, feeling, seeing, hearing, speaking, or tasting. *Id.* Dr. Ahmed completed a Medical Source Statement in which he limited Plaintiff to part-time sedentary work. R. 136-37.

On August 5, 2004, a state agency medical consultant assessed Plaintiff's physical residual functional capacity ("RFC"). Based on his review of the medical records, the medical

3

consultant concluded that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for about 6 hours in an 8-hour day, sit with normal breaks for about 6 hours in an 8-hour day, and push and/or pull (including the use of hand and/or foot controls) for an unlimited period of time. R. 142. The state medical consultant found no evidence of any manipulative, visual, communicative, or environmental limitations. R. 145. He also found that Plaintiff retained the capacity for medium work, a finding that differed from the conclusion of Dr. Ahmed R. 147. The state medical consultant noted that the opinion of Dr. Ahmed was not supported by evidence and provided greater restrictions than necessary. *Id.*

On October 4, 2004, a state agency physician, K. Sarpolis, M.D., reviewed and agreed with the RFC assessment prepared by the state medical consultant. R. 149-150.

In early 2005, Plaintiff saw Dr. Sawicki on a couple of occasions, in which he reported knee, neck, and back pain with movement. The physical examination revealed decreased neck and lower back range of motion, while Plaintiff's knees had full range of motion. R. 152-153. Dr. Sawicki prescribed Mobic for Plaintiff's pain and Covera to regulate his blood pressure. R. 155. At subsequent appointments in April, June, and September 2005, Dr. Sawicki noted that Plaintiff continued to experience pain with movement of his knee, neck, and lower back, although the range of motion in Plaintiff's neck was normal. R. 153-154.

The medical records do not reflect that Plaintiff has required aggressive medical treatment, frequent hospitalization confinement / emergency room care or surgical intervention for his allegations of chronic pain.

### B. Procedural History

Plaintiff filed his application for DIB and SSI on May 28, 2004. The claim was denied by the Pennsylvania state agency. An administrative hearing was held on July 14, 2006, before Administrative Law Judge William W. Berg ("ALJ"). Plaintiff was represented by counsel and testified at the hearing. Also testifying at the hearing was Irene Montgomery, an impartial vocational expert.

On July 24, 2006, the ALJ rendered a decision which was unfavorable to Plaintiff in which he found that Plaintiff retained the residual capacity to perform work at the light exertional level, with restrictions, and therefore was not disabled within the meaning of the Act.

The ALJ's decision became the final decision of the Commissioner on November 30, 2006, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. On January 9, 2007, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff argues that the decision of the ALJ is not supported by the factual and medical evidence of record. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

**III.    Legal Analysis**

    **A.    <u>Standard of Review</u>**

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

In situations where claimants have filed concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Kapusta v. Sullivan*, 900 F.2d 95, 95 n.4 (7th Cir. 1989) ("The standards for disability benefits and Supplemental Security Income are identical, so we treat . . . [the claimant's] applications as one"); *Davis v. Heckler*, 748 F.2d 293, 295 n.2 (5th Cir. 1984) (claims for SSI and DIB are treated together because "the relevant law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental income benefits).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant

6

(1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,

> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the

7

national economy.  *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

It is well established that state agency consultants are considered to be "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I).  The opinions of state agency consultants may constitute substantial evidence which support the findings of the ALJ provided they are supported by substantial evidence in the record.  It is well established that a medical opinion will not be given controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2).

## B. Discussion

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the decision of the Commissioner or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

Plaintiff argues that the ALJ erred, as a matter of law, when he failed to accord controlling weight to the opinion of Dr. Ahmed, the consultative examiner, and when the ALJ allegedly used his own lay interpretation of the medical evidence to adopt a light RFC assessment . Plaintiff also contends that if Plaintiff is deemed to be limited to sedentary work, then Medical Vocational Rule 201.06 dictates that Plaintiff be found disabled based on the vocational factors of age, education, and past relevant work.

The Commissioner asserts that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Commissioner argues that the opinion of Dr. Ahmed does not deserve controlling weight since the extreme limitations he identified in the Medical Source Statement are not consistent with the other substantial evidence contained in the record.

1. *The ALJ correctly concluded that the opinion of Dr. Ahmed did not deserve controlling weight as it was not supported by substantial evidence.*

Plaintiff argues that the opinion of Dr. Ahmed that Plaintiff could perform less than sedentary work is supported by substantial evidence in the record and that the ALJ erred in not giving this opinion controlling weight. The Court finds this argument to be without merit.

It is well established that state agency consultants, such as Dr. Ahmed, are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527 (f)(2)(I). Their opinions are given substantial or controlling weight so long as their findings are supported by substantial evidence in the record. SSR 96-6p. The ALJ reviewed all of the medical evidence in the record and found that the opinion of Dr. Ahmed deserved only minimal weight, as his opinion was not consistent with the medical evidence in the record. Dr. Ahmed's examination of Plaintiff revealed that he was capable of walking seven (7) blocks before the pain worsened, his strength and tone were good, and he had a normal range of motion in his shoulder, elbow, wrist, hip, knee, ankle, and neck (his cervical area). R. 133. Dr. Ahmed also found that Plaintiff's gait was good, there was no atrophy, Plaintiff was able to walk on his heels and toes, there was no involuntary movement, and his touch and pain sensations were intact. Plaintiff's coordination was normal along with the reflexes in his biceps, triceps, brachioradialis, quadriceps, and gastrocnemius (the muscle which helps with the extension of the foot and the bending of the knee)[2]. *Id.* Dr. Ahmed also ordered

---

[2]Merriam-Webster's Medical Dictionary. Definition retrieved April 29, 2008, from http://dictionary.reference.com/browse/gastrocnemius.

x-rays of Plaintiff's lumbar spine which revealed a mild narrowing of the L4-L5 disc with associated degenerative changes and intact sacroiliac joints. R. 140. The ALJ found, and the Court agrees, that none of Dr. Ahmed's findings confirm the extreme limitations reflected in the Medical Source Statement prepared by Dr. Ahmed.

The ALJ also considered the findings of a state agency medical consultant and that of a state agency physician, Dr. Sarpolis, all of which contradicted the findings of Dr. Ahmed. The state agency medical consultant reviewed Plaintiff's medical records, assessed Plaintiff's RFC, and concluded that Plaintiff had the capacity for medium work requiring the occasional climbing of stairs and stooping and the prohibition of the climbing of ropes, ladders, or scaffolds. R. 142-143. The state agency medical consultant noted that the assessment by Dr. Ahmed of Plaintiff's work capacity was greater than that which the medical evidence indicated and that it was not supported by the evidence in the medical record. R. 147.

Likewise, Dr. Sarpolis, the state agency physician, reviewed Plaintiff's medical record on October 4, 2004, and agreed with the findings of the state agency medical consultant that Plaintiff could perform medium work, with limitations.

The ALJ also took note of the degree of medical treatment that Plaintiff had received for his impairments. Plaintiff has not obtained any kind of aggressive medical treatment nor has he undergone surgical intervention. R. 16-17. His medical history regarding his alleged impairments consists of a few visits to his family physician, Dr. Sawicki.

The Court concludes that the ALJ properly considered the opinion of Dr. Ahmed, weighed the opinion against the evidence in the record, and determined that the opinion of Dr. Ahmed was not supported by substantial record evidence.

2.  *The adverse credibility determination of the ALJ was not erroneous.*

Plaintiff argues that the ALJ failed to fully consider his subjective complaints of pain and did not accord the proper weight to his work history. Pain, however, is not conclusive as evidence of disability. There must also be "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all [the] evidence . . . would lead to a conclusion that the individual is under a disability." *Chrupcala v. Heckler*, 829 F.2d 1269, 1275 (3d Cir. 1987). *See also* 20 C.F.R. § 404.1529. However, even when subjective complaints of pain are not fully supported by medical evidence, an ALJ must still consider them seriously. *Welch v. Heckler*, 80 F.2d 264, 270 (3d Cir. 1986). Furthermore, an ALJ is permitted to determine that a claimant's testimony with regard to his or her impairments is less than credible if there are inconsistencies in the claimant's testimony or daily activities. *Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

In this case, the ALJ found that there was no objective medical evidence to support Plaintiff's complaints of pain. The ALJ found that Plaintiff's statements regarding his pain were

not supported by the evidence of record. During the hearing, Plaintiff testified about his alleged impairments and daily activities. Plaintiff stated that he suffers from constant pain in his back and neck, which can reach a level of 8 out of 10 during the worst moments; he is not able to stand still but has to walk around a bit; he is able to bend and stoop albeit slowly and with the aid of something to hold on to; and he can climb ten to twelve steps. R. 187-189. He performs exercises at home for his back. R. 190. Plaintiff also stated that he gets about two to three headaches a month which go away in an hour after taking over-the-counter pain medication. R. 191. He also complained of chronic pain in his hip, knee, arm, and shoulder. He is able to drive, run errands, shop for groceries, prepare and cook his own meals, and vacuum his apartment. R. 193-195. Plaintiff watches television and occasionally does outings with his friends, such as going to the Sportsman's Club to watch a race. R. 195.

As discussed above, the ALJ seriously considered Plaintiff's statements of subjective pain, but noted the limited treatment history for these alleged impairments. The ALJ concluded that the conservative treatment Plaintiff received for his impairments served as an indication that his impairments were not as pervasive as he claimed. Plaintiff is able to perform daily activities. He does not use any prescription medications for his pain, but rather uses over-the-counter pain medications. R. 18. The only prescription medication he uses is Verapamil, 240 mg, once a day for his hypertension. *Id.* There is no evidence in the record which reflects that Plaintiff uses or requires the aid of a TENS unit, back brace, bed board, cervical collar or any other type of device to aid with ambulation. *Id.* Furthermore, Plaintiff has not been referred to a pain management

clinic by any of the medical providers of record. *Id.* There is no evidence of Plaintiff undergoing any type of required aggressive medical treatment or surgical intervention. *Id.* Physical examination of Plaintiff revealed a mild narrowing at the L4-L5 level with no signs of fracture or subluxation.   R. 16.  The Court finds that the ALJ properly concluded that there was no substantial evidence in the record which supported Plaintiff's claim of debilitating impairments.

Plaintiff also argues that the ALJ erred by failing to accord him heightened credibility based on his work history.  In support of this argument, Plaintiff refers to his long and productive work history.  As mentioned above, Plaintiff has worked consistently from 1961 to 2004, with the exception of three years in the early 1990s.  R. 55.  It would appear that Plaintiff is asking the Court to disregard the lack of substantial evidence which would support his statements of subjective pain and also ignore the fact that Plaintiff stated in his testimony that the reason he stopped working was because the company he worked for closed, not due to his impairments.  R. 18 and 186.  Therefore, the Court finds that the ALJ did not err in his credibility determination and properly discounted Plaintiff's testimony.

3. *The ALJ correctly assessed the Residual Functional Capacity of Plaintiff.*

Finally, Plaintiff argues that the ALJ improperly concluded that the evidence of record failed to support his assertion of disability and that he retained the residual functional capacity ("RFC") to perform sedentary work.  The Commissioner contends that the ALJ fully reviewed all the evidence of record and correctly determined that Plaintiff retained the capacity for light work.

14

Once again, the ALJ noted that Dr. Ahmed's finding of a 'less than sedentary work' capacity was not supported by the record evidence on record. Furthermore, Dr. Sarpolis, after reviewing the state agency medical consultant's assessment, concluded that Plaintiff retained the capacity for medium work. R. 142-143, 149-150. The ALJ determined that Plaintiff's past work as a printing press machine operator and a folding machine operator was light work and Plaintiff had the capacity to return to such work.

The ALJ posed a hypothetical question to the vocational expert which incorporated Plaintiff's subjective complaints and inquired into whether a person of Plaintiff's age, education, and work experience with the limitations of occasional stooping and climbing of ramps and stairs, the avoidance of climbing ladders, ropes, scaffolds, dangerous machinery, unprotected heights, and frequent movements (left and right) of the head could perform Plaintiff's past work. The vocational expert testified that Plaintiff could still engage in his past work even with the limitations that the ALJ proposed. The Court, therefore, finds that the determination of the ALJ as to Plaintiff's residual functional capacity is supported by substantial evidence.

## IV. Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled

15

within the meaning of the Social Security Act, and that Plaintiff remains able to perform work at the light exertional level, which does not require more than occasional stooping or climbing of ramps and stairs or any climbing of ladders, ropes, or scaffolds.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ARTHUR HALLDIN,                )
                               )
            Plaintiff,         )    2:07-cv-022
     v.                        )
                               )
MICHAEL J. ASTRUE,             )
COMMISSIONER OF SOCIAL SECURITY, )
                               )
            Defendant.         )

**ORDER OF COURT**

AND NOW, this 7th day of May, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment filed by Plaintiff, Arthur Halldin (Document No. 8) is **DENIED**;

2. The Motion for Summary Judgment filed by Defendant, Michael J. Astrue, Commissioner of Social Security (Document No. 11) is **GRANTED;** and

3. The Clerk of Court is to docket this case closed forthwith.

BY THE COURT:


s/Terrence F. McVerry
United States District Court Judge

cc: Karl E. Osterhout, Esquire
Email: karl@keolaw.com

Gregory Melucci,
Assistant U.S. Attorney
Email: gregory.melucci@usdoj.gov